## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| PAMELA HILL,<br><br>      Plaintiff,<br><br>v.<br><br>CITY OF ATLANTA,<br><br>      Defendant. | Civil Action No. 1:21-cv-05087-JPB-JCF<br><br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a)(2), and with the consent of Defendant City of Atlanta (the "City"), Plaintiff Pamela Hill ("Plaintiff") files this First Amended Complaint against the City, alleging violations of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"). Plaintiff shows the Court as follows:

## NATURE OF THE ACTION

1.     As set forth in her original Complaint, Plaintiff claims that the City violated the ADA by: (1) terminating her employment because of her disabilities after Plaintiff allegedly failed a City-administered random drug screen, despite the City's knowledge that she took life-saving medication for a disability that could result in false-positive drug test; (2) failing to accommodate Plaintiff's request for a

1

reasonable accommodation by terminating her employment and then reinstating her to a lesser position after she provided documentation showing that her prescribed life-saving medication could yield a false-positive drug test; and (3) discriminatorily demoting Plaintiff on the basis of her disability upon her reinstatement, thereby reducing Plaintiff's earning potential placing her into a position that had a significantly lower salary cap after the City's initial termination decision was overturned.

2.      Following the issuance of a Notice of Right to Sue on her second Charge of Discrimination against the City after the initiation of this action, Plaintiff files this First Amended Complaint, in which she asserts that the City retaliated against her in violation of the ADA by (1) demoting her upon her reinstatement following her discriminatory termination, and (2) refusing to consider her for interviews for open positions with the City for which she applied and for which she was qualified, and after finally permitting Plaintiff to interview, refusing to hire Plaintiff into positions for which she had interviewed and for which she was qualified.

3.      Plaintiff seeks declaratory relief, lost wages and benefits, compensatory damages, prejudgment interest, and attorneys' fees and costs.

## JURISDICTION AND VENUE

4.     This court has federal-question jurisdiction over Plaintiff's ADA claims, pursuant to 28 U.S.C. § 1331.

5.     Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3), and Local Rule 3.1(B), venue is proper in this Court because the unlawful employment practices described herein were primarily committed within the Atlanta Division of the Northern District of Georgia, where the City is located and employed Plaintiff.

## PARTIES

6.     Plaintiff is a citizen of the United States of America and a resident of the State of Georgia; she submits herself to the jurisdiction of this court.

7.     Plaintiff is currently employed by the City, and has been employed by the City since 1991, with breaks in service only due to the City's recurrent ADA violations.  Her current title is Construction Inspector, Sr.

8.     Defendant City of Atlanta is a city located within the State of Georgia and the Atlanta Division of the Northern District of Georgia.

9.     The City may be served with process through its City Attorney, Nina Hickson, at City of Atlanta, Department of Law, 55 Trinity Avenue, Suite 1350A, Atlanta, Georgia 30303.

10.   The City is an "employer" within the definition of the ADA and is governed thereby.

11.   Plaintiff was an "employee" of the City within the meaning of the ADA at all times relevant to this Complaint.

## ADMINISTRATIVE EXHAUSTION

12.    Plaintiff has satisfied all administrative prerequisites for bringing her ADA claims in this Court.

13.   On February 15, 2018, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 410-2018-03370), in which she asserted that the City had discriminated against her on the basis of her disability (the "2018 EEOC Charge").

14.   On March 25, 2021, the EEOC determined that there was reasonable cause to conclude that the City had discriminated against Plaintiff because of her disability, in violation of the ADA.

15.   On May 6, 2021, the EEOC transferred Plaintiff's 2018 EEOC Charge to the U.S. Department of Justice.

16.   On September 15, 2021, the U.S. Department of Justice issued a Notice of Right to Sue on Plaintiff's 2018 EEOC Charge.

17.     Plaintiff filed her original Complaint, in which she asserted her ADA discrimination and failure-to-accommodate claims against the City, within ninety (90) days of her receipt of the Notice of Right to Sue ("NRTS") on the 2018 EEOC Charge.

18.     On December 10, 2019, Plaintiff filed a second Charge of Discrimination (Charge No. 410-2020-01889), in which she asserted that the City had retaliated and was continuing to retaliate against her for having engaged in protected activity, in violation of the ADA (the "2019 EEOC Charge").

19.     The EEOC subsequently transferred the 2019 EEOC Charge to the U.S. Department of Justice.

20.     On February 3, 2022, the U.S. Department of Justice issued a Notice of Right to Sue on Plaintiff's 2019 EEOC Charge.

21.     Plaintiff now files her First Amended Complaint, in which she additionally asserts two (2) ADA retaliation claims against the City, within 90 days of her receipt of the NRTS on the 2019 EEOC Charge.

## STATEMENT OF FACTS

22.     Plaintiff is a current employee of the City and began her employment in 1991.  Her current title is Construction Inspection, Sr.

5

23.    Plaintiff takes prescribed medication to manage a chronic, life-threatening disability.  This medication can cause false positives for marijuana metabolites on drug screens.

24.    In December 2011, the City fired Plaintiff after she underwent a random drug screen administered during a physical examination required by the City as a condition of her employment, which came back positive for marijuana metabolites.

25.    Plaintiff provided the City with documentation from her healthcare provider that informed the City that the failed drug screen was a result of the medication that she took for her disability.

26.    Plaintiff appealed her termination to the City's Civil Service Board (the "Board"), which reinstated Plaintiff after she demonstrated that her prescribed life-saving medication could result in a false-positive result for marijuana metabolites.

27.    Between Plaintiff's reinstatement following her 2011 termination and February 2018, she received several positive performance reviews and pay increases.

28.    In addition, in May 2015, Plaintiff was promoted to the role of Water Distribution Supervisor, which role she held between May 2015 and February 2018.

29.    At all relevant times, Plaintiff was (and remains) qualified to fulfill the essential functions of the Water Distribution Supervisor role.

6

30.     On or about November 28, 2017, Plaintiff was required to submit to another drug screen as part of the City's random drug-screening policy.  As a result of the prescribed medication that Plaintiff took for her disability, the drug screen again returned a false-positive result for marijuana metabolites.

31.     After the false-positive result, Plaintiff informed her manager that, due to circumstances surrounding her prior termination in 2011, she assumed that there would be some notation in her personnel file noting that the life-saving medication prescribed to her for her disability would cause her to fail a drug screen.

32.     Following the false-positive drug screen, Plaintiff again submitted to the City paperwork from her healthcare provider indicating that the drug screen results were a side effect of the life-saving medication that she was prescribed by her healthcare provider for her disability.

33.     Despite Plaintiff's submission of the paperwork from her healthcare provider concerning her prescribed medication, Plaintiff was placed on paid administrative leave on February 2, 2018, by Chris Lewis, Deputy Commissioner, Office of Linear Infrastructure Operations, with the City's Department of Watershed Management.  A Proposed Notice of Adverse Action was issued to Plaintiff that same day, stating that her dismissal was being requested.

34.    On February 15, 2018, City Commissioner Kishia Powell, via her assistant, signed a Notice of Final Adverse Action that stated that Plaintiff's termination would be effective on February 20, 2018.

35.    That same day, February 15, 2018, Plaintiff filed a Charge of Discrimination with the EEOC, alleging that the City discriminated against her on the basis of her disability by terminating her employment as a result of the failed drug screen.

36.    Plaintiff appealed her termination to the Board, which held a hearing on Plaintiff's appeal on July 11, 2018.

37.    In approximately June 2018, Plaintiff was interviewed by Fox 5 Atlanta for a television segment regarding her termination and efforts to be reinstated, which interview aired on or about June 13, 2018.

38.    On July 23, 2018, the Board issued an Opinion finding that Plaintiff should be reinstated as of the date of the Opinion.

39.    In its Findings of Fact, the Board found that, *inter alia*:

     a.    "The same chronic malady from which [Plaintiff] suffered at the time of the 2011 drug screen was the same condition which required her taking the same type of life-saving

medication prescribed by her attending physician at the time of the 2017 test";

b.    "At the time of both drug screens, [Plaintiff] clearly showed that she was under a licensed medical doctor's care who prescribed the life-saving medication. . . ."; and

c.    Plaintiff presented City management, the doctor responsible for reviewing the results of her 2017 drug screen, and the Board with printed information stating that Plaintiff's prescribed medication could return a false-positive result on certain drug screens.

40.    In its discussion of Plaintiff's appeal, the Board noted that Plaintiff had only one disciplinary action in her employment file during her nearly 27-year tenure with the City, which stemmed from a vehicle accident involving Plaintiff.

41.    The Board further noted that, for the vast majority of her employment with the City, Plaintiff had maintained an above-average performance record.

42.    In addition, the Board posited "that anyone in the same quandary as [Plaintiff] found herself could be facing this Catch-22: either continue taking your life-extending medicine and risk losing your multi-decade job or stop taking your

medication and preserve your job.  Simply stated, save your life or save your job and you can only choose one."

43.     The Board stated that Plaintiff "either trusted and/or assumed that her management knew her particular circumstance because of the 2011 employment termination and appeal episode.  She thought that her employer would understand the potential for a false-positive [drug screen] because of her prescribed medication, and that City management would not hold a positive [marijuana] result against her."

44.     The Board also stated that the manufacturer of Plaintiff's medication had publicly disclosed that false-positive results had been received that "should create caution in all of the employment drug screening industry that this information should not be discounted or ignored and that minimally, further investigation by the approving medical professional into the issue warranted."

45.     Finally, the Board observed that the City's municipal code (the "Code") did not mandate termination as the only discipline available in the event of an employee's positive drug screen.  Instead, the Board stated that the Code gave City management "the flexibility to impose *any discipline up to* and including termination.  The Board believes that in this instance, the decision to terminate [Plaintiff's] employment was unwarranted."  (Emphasis in original).

46.    The Board strongly suggested that, although it did not have the authority to order the City to do so, the City should place Plaintiff "in a commensurate position as that from which her employment was terminated but which is not security-sensitive and therefore does not mandate random drug screening."

47.    On or about August 8, 2018, Fox 5 Atlanta ran another story regarding Plaintiff's termination, the proceedings before the Board, and Plaintiff's reinstatement.  In that story, Fox 5 Atlanta noted that Plaintiff's fight with the City was not over, as it was possible that she would not be awarded back pay.  In that interview, Plaintiff stated that her unjustified firing placed a financial strain on her household.

48.    Following the Board's decision reinstating Plaintiff's employment, Plaintiff was informed that she was being placed into role of Construction Inspector, Sr. position, which position she still holds, rather than her prior role of Water Distribution Supervisor.

49.    At the time of Plaintiff's reinstatement, the Water Distribution Supervisor role was still available.

50.    Although Plaintiff received the same salary as Construction Inspector, Sr. as she previously had received as Water Distribution Supervisor, the high end of

the salary range for Construction Inspector, Sr. was substantially lower than that for Water Distribution Supervisor.

51.   At the time of her reinstatement in August 2018, Plaintiff's pay was at the top of the Construction Inspector, Sr. pay range.  As a result, Plaintiff's ability to receive in-role pay increases has been, and continues to be, substantially reduced since her reinstatement.

52.   Additionally, there is effectively no room for professional growth within Plaintiff's current department as Construction Inspector, Sr., further limiting Plaintiff's earning potential.

53.   The City intentionally discriminated against Plaintiff by terminating her employment because of Plaintiff's disability, and further discriminated against Plaintiff with respect to her compensation by reinstating her to a position with substantially lower earning potential, all in violation of the ADA.

54.   In addition, the City violated the ADA by failing to provide Plaintiff with a reasonable accommodation for her disability, which included not terminating her employment after she provided medical documentation showing that her false-positive drug screen was the result of life-saving medication she was prescribed for her disability, and reinstating her to the position of Water Distribution Supervisor upon her reinstatement.

55.     In April 2019, Plaintiff emailed City Council Member Michael Bond, stating that she would like to meet with him regarding her reinstatement to the position of Construction Inspector, Sr., rather than Water Distribution Supervisor.

56.     In August 2019, Plaintiff emailed the Chief of Staff for the City's Mayor, Carmen Chubb, asking, *inter alia*, why she was not reinstated to the position of Water Distribution Supervisor.  In that email, Plaintiff also noted that there was no room to advance in her current department.

57.     Between August 2018 and approximately November 2019, Plaintiff did not receive a single interview despite having submitted more than a dozen applications.

58.     In September 2019, Plaintiff emailed City HR Director James Merriweather regarding the lack of response to her job applications.

59.     On or about November 15, 2019, Plaintiff emailed City HR Director Kellye Terrell, stating that it seemed that she was being barred from receiving interviews following her reinstatement, noting that she had not received a single interview to her 28 applications.

60.     On or about November 19, 2019, HR Director Terrell directed Plaintiff to contact City HR Manager Janine Williams.  That same day, Plaintiff emailed Williams and again complained that about not having received any interviews.

61.    On December 10, 2019, Plaintiff filed the 2019 EEOC Charge, alleging that the City was retaliating against her in violation of the ADA by denying her interview opportunities.

62.    Plaintiff engaged in protected activity under the ADA by filing the 2019 EEOC Charge.

63.    On or about February 14, 2020, Plaintiff met with HR Director Terrell regarding Plaintiff's lack of interviews.  Ms. Terrell indicated that Plaintiff would have to be patient and wait until the EEOC proceedings were completed before she would receive an interview.

64.    In June 2020, Plaintiff emailed Mayor Keisha Lance Bottoms, copying, among others, Interim HR Commissioner Jeffrey Norman and HR Director Terrell, stating that she had not received a response to her applications for approximately one and a half years, and that she was ready to go to the media.

65.    On or about October 17, 2020, Plaintiff participated in a conference call with HR Director Terrell and HR Manager Williams, during which Ms. Terrell again stated that Plaintiff would not be considered for a promotion or transfer until her EEOC proceedings were completed.

66.    In September 2021, Plaintiff emailed City HR Director Jennifer Hicks, stating that she felt that no one would give her an interview because she had given

14

television interviews to a local news station after she was terminated in February 2018.

67.     The City denied Plaintiff interviews and job offers for which she was qualified in retaliation for opposing the City's discrimination termination of her employment on the basis of her disability.

68.     Further, the City retaliated against Plaintiff for engaging in protected activity, to wit, filing Charges of Discrimination with the EEOC, by systematically denying her interviews and promotions for positions for which she was well qualified.

69.     Due to the City's violations of the ADA, Plaintiff has experienced lost compensation, including, but not limited to, raises to which she would have been entitled but for the City's discriminatory actions, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

70.     The City acted with the specific intent to harm Plaintiff.

## COUNT I
## Discriminatory Termination in Violation of the ADA

71.     At all relevant times, Plaintiff was an employee with disabilities within the meaning of the ADA.

72.     At all relevant times, Plaintiff had a record of a disability as set forth in 42 U.S.C. § 12102(1)(B).

73.     At all relevant times, the City regarded Plaintiff as having a disability as set forth in 42 U.S.C. § 12102(1)(C).

74.     At all relevant times, Plaintiff was qualified to perform the essential functions of the Water Distribution Supervisor role.

75.     At all relevant times, the City was an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5).

76.     The City violated the ADA by discriminating against Plaintiff by terminating her employment because of her disability, record of disability, and/or because the City regarded her as disabled.

77.     Specifically, the City terminated Plaintiff's employment because her November 2017 drug screen yielded a false-positive result, even though (1) the City previously had been made aware that the prescribed life-saving medication that Plaintiff took for her disability could result in a false positive, and (2) Plaintiff again informed the City of the possibility of a false-positive result after the November 2017 drug screen.

78.     As a result of the City's violations of the ADA, Plaintiff has incurred lost compensation, including raises to which she would have been entitled but for the City's discriminatory actions, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

79.     Plaintiff seeks all available relief under the ADA, including compensatory damages, lost wages and benefits, interest, reasonable attorneys' fees and costs.

## COUNT II
## Failure to Accommodate in Violation of the ADA

80.     At all relevant times, Plaintiff was an employee with disabilities within the meaning of the ADA.

81.     At all relevant times, Plaintiff had a record of a disability as set forth in 42 U.S.C. § 12102(1)(B).

82.     At all relevant times, Plaintiff was qualified to perform the essential functions of the Water Distribution Supervisor role, with or without a reasonable accommodation.

83.     At all relevant times, the City was an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5).

84.     The City violated the ADA by failing to provide Plaintiff with a reasonable accommodation for her disabilities, which included (1) declining to terminate her employment in February 2018 after she provided medical documentation that her false-positive drug screen was the result of life-saving medication that she was prescribed for her disability, and (2) reinstating her to the role of Water Distribution Supervisor upon her reinstatement.

85.     As a result of the City's violations of the ADA, Plaintiff has incurred lost compensation, including raises to which she would have been entitled but for the City's discriminatory actions, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

86.     Plaintiff seeks all available relief under the ADA, including compensatory damages, lost wages and benefits, interest, reasonable attorneys' fees and costs.

## COUNT III
## Discriminatory Demotion in Violation of the ADA

87.     At all relevant times, Plaintiff was an employee with disabilities within the meaning of the ADA.

88.     At all relevant times, Plaintiff had a record of a disability as set forth in 42 U.S.C. § 12102(1)(B).

89.     At all relevant times, the City regarded Plaintiff as having a disability as set forth in 42 U.S.C. § 12102(1)(C).

90.     At all relevant times, Plaintiff was qualified to perform the essential functions of the Water Distribution Supervisor role.

91.     At all relevant times, the City was an "employer" within the meaning of the ADA, 42 U.S.C. § 12111(5).

92.     The City violated the ADA by discriminating against Plaintiff because of her disability, record of disability, and/or because the City regarded her as disabled, by demoting her upon her reinstatement.

93.     Specifically, the City demoted Plaintiff by placing her into the role of Construction Inspector, Sr. after she was reinstated, which position has a lower salary cap than her prior role of Water Distribution Supervisor, even though the Water Distribution Supervisory position remained open at the time of her reinstatement.

94.     As a result of the City's violations of the ADA, Plaintiff has incurred lost compensation, including raises to which she would have been entitled but for the City's discriminatory actions, and has suffered emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

95.     Plaintiff seeks all available relief under the ADA, including compensatory damages, lost wages and benefits, interest, reasonable attorneys' fees and costs.

**COUNT IV**
**Retaliatory Demotion in Violation of the ADA**

96.     Plaintiff engaged in protected activity under the ADA by, *inter alia*, opposing her termination, filing the 2018 EEOC Charge, and seeking reinstatement after following her 2018 drug screen.

97.     Following Plaintiff's reinstatement in August 2018, Defendant retaliated against her for engaging in protected activity under the ADA by reinstating her to the position of Construction Inspector, Sr., which position had a substantially lower salary cap than her prior position of Water Distribution Supervisor.

98.     Defendant's retaliation against Plaintiff would have dissuaded a reasonable person from engaging in protected activity.

99.     As a consequence of the retaliation that she experienced from the City, Plaintiff has experienced lost wages and benefits due to the lower earning potential of the Construction Inspector, Sr. position into which she was reinstated, as compared to her prior position of Water Distribution Supervisor.

100.    Plaintiff seeks all available relief under the ADA, including lost wages and benefits, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

**COUNT V**
**Retaliatory Denial of Promotion in Violation of the ADA**

101.    Plaintiff engaged in protected activity under the ADA by, *inter alia*, opposing her termination, seeking reinstatement after following her 2018 drug screen, and filing the 2018 and 2019 Charges.

102.    Following Plaintiff's reinstatement in August 2018, Defendant retaliated against her for engaging in protected activity under the ADA by denying

her the opportunity to interview for positions with the City for which she applied and for which she was qualified.

103.    Defendant's retaliation against Plaintiff would have dissuaded a reasonable person from engaging in protected activity.

104.    As a consequence of the retaliation that she experienced from the City, Plaintiff has experienced lost wages and benefits due to the lower earning potential of the Construction Inspector, Sr. position as compared to her prior position of Water Distribution Supervisor, and her inability to interview for and/or be offered a new position with greater earning potential.

105.    Plaintiff seeks all available relief under the ADA, including lost wages and benefits, prejudgment and post-judgment interest, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and the following relief:

a)    A declaratory judgment that the practices of the City complained of herein are unlawful under the ADA;

b)    Full lost wages and benefits;

c)    Compensatory damages in an amount to be determined by the jury;

21

d)      An award of prejudgment and post-judgment interest;

e)      Attorneys' fees and costs; and

f)      All other equitable and other further relief as this court deems just and proper.

     Respectfully submitted this 22nd day of March 2022.

> */s/ Michael D. Forrest*
> Michael D. Forrest
> Georgia Bar No. 974300
> Justin M. Scott
> Georgia Bar No. 557463
> SCOTT EMPLOYMENT LAW, P.C.
> 160 Clairemont Avenue, Suite 610
> Decatur, Georgia 30030
> Telephone: 678.780.4880
> Facsimile: 478.575.2590
> jscott@scottemploymentlaw.com
> mforrest@scottemploymentlaw.com
>
> Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| PAMELA HILL, | |
| Plaintiff, | Civil Action No. 1:21-cv-05087-JPB-JCF |
| v. | |
| CITY OF ATLANTA, | **JURY TRIAL DEMANDED** |
| Defendant. | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 22, 2022, I electronically filed this **Certificate of Service** serving **Plaintiff's First Amended Complaint** with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

Respectfully submitted, this 22nd day of March 2022.

<u>*/s/ Michael D. Forrest*</u>
Michael David Forrest
Georgia Bar No. 974300
Justin M. Scott
Georgia Bar No. 557463
Scott Employment Law, P.C.
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com
mforrest@scottemploymentlaw.com

1

Counsel for Plaintiff